Standard Marine Ins. Co., Ltd., of Liverpool v. Traders Compress Co.

upon the ground that the trust could be proven only by a written declaration thereof, and not by the proffered evidence of the plaintiff.

However, in view of our conclusion that the plaintiff is estopped, as hereinafter shown, possible error, if any, in our foregoing views, is harmless to the plaintiff. That the plaintiff is estopped, by her aforesaid conduct, to assert an equitable title and ask a cancellation of deeds against the defendant Chandler, seems absolutely clear. 16 Cyc. 785-790; *Scott v. Signal Oil Co.,* 35 Okla. 172, 128 Pac. 694; *Quimby v. Uhl,* 130 Mich. 198, 89 N. W. 722; *Marx v. Clisby,* 130 Ala. 502, 30 South. 517; *Newton v. Redenack,* 90 Mo. App. 650; *Matt v. Matt* (Iowa) 137 N. W. 489; *Fraser v. Cole,* 214 Fed. 556, 131 C. C. A. 102.

For the reasons stated, the judgment of the trial court should be reversed.

By the Court: It is so ordered.

---

# STANDARD MARINE INS. CO., LIMITED, OF LIVERPOOL v. TRADERS' COMPRESS CO. (Two cases).

No. 4288 1-2. Opinion Filed May 11, 1915.

(148 Pac. 1019.)

1. **APPEAL AND ERROR—Invited Error—Instructions.** Where a case is tried upon the theory that it was a question of fact for the jury to determine as to whether or not defendant was a bailee for hire or a gratuitous bailee, and plaintiff requested an instruction the same as the one given by the court, it cannot be heard to complain upon the ground that the question was one of law for the court.

2.    BAILMENT—Instructions—Bailee for Hire. Where the court in-
structed the jury that if they found from the evidence that the
cotton was being stored and kept by defendant on its compress
platform, and that it was charging the owners    thereof    any
amount for such storage or receiving any benefit from such stor-
age, then it became a bailee for hire, and, in addition thereto,
keeps personal property for another under an agreement whereby
he would receive some profit or financial benefit, held, that these
instructed the jury that a bailee for hire is one who stores or
instructions must be considered and construed together, and,
when so construed, are not inconsistent, but advise the jury that,
before they would be justified in finding that defendant was a
bailee for hire, it would be necessary for it to prove that defend-
ant was either (1) actually charging for such storage, or (2)
receiving some profit or financial benefit for the same.

3.    BAILMENT—Evidence—"Burden of Proof"—"Burden of Evi-
dence." The burden of establishing the entire case by a prepon-
derence of the evidence is at all times upon the party having
the affirmative, and remains during the entire case where the
pleadings originally placed it. Proof of the bailment and loss or
injury constitutes a prima facie case under certain conditions,
but this has no effect upon the burden of proof, as it remains
unchanged. The duty of proceeding to adduce evidence after
prima facie case has been established shifts to the party with
the negative of the issue. This, however, is not a shifting of
the burden of proof, as it remains where the pleadings placed it,
but, after a prima facie case has been established, the burden
of producing the evidence necessary to overcome the prima facie
case shifts to the defendant, and this is termed a shifting of the
burden of evidence.

4.    BAILMENT—Damages from Fire—Neglence—Burden of Proof.
In an action against a bailee for hire for injury to cotton, where
it is alleged that the injury was occasioned by fire, and that
such fire was caused by the negligence of the bailee, the court
properly instructed the jury that the burden of proof was upon
the plaintiff to prove that the fire was caused by the defendant's
negligence.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Canadian County;*

*John J. Carney, Judge.*

Actions by the Standard Marine Insurance Company, Limit-
ed, of Liverpool, a corporation, against the Traders' Compress

358    SUPREME COURT OF OKLAHOMA.

Standard Marine Ins. Co., Ltd., of Liverpool v. Traders Compress Co.

Company, a corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Keaton, Wells & Johnson,* for defendant in error.

RITTENHOUSE, C. On January 4, 1909, the Standard Marine Insurance Company, Limited, of Liverpool, a corporation, instituted two actions against the Traders' Compress Company, of El Reno, Okla. In each petition it alleged that the Traders' Compress Company was the owner of a compress in El Reno, Okla., and that on the 13th day of January, 1908, there was a certain number of bales of cotton stored in and about the yards and on the platform of the compress, of which cotton Anderson, Clayton & Co. were the owners of 25 bales, of the value of $1,447.50, and H. T. Williams & Co. were the owners of 287 bales, of the value of $17,498.83; that defendant negligently permitted sparks to escape from its engine and smokestack which set fire to said cotton, burning and destroying the same; that, prior to the date of the fire, plaintiff had issued policies of insurance to each of the owners of said property, insuring their cotton against loss or damage by fire while located at the compress; that after said fire, and after due notice and proof of loss had been made, plaintiff paid Anderson, Clayton & Co. and H. T. Williams & Co. the amount of their losses under said policies, and plaintiff thereupon prayed that it be subrogated to the rights of the holders of said policies, and that it have judgment against defendant in the sum of $767.77 as damages to the 25 bales of cotton insured for Anderson, Clayton & Co., and judgment for the sum of $8,358 damages to the 287 bales of cotton insured for H. T. Williams & Co. Upon stipulation both cases were tried to the same jury, and on February 1, 1911, a verdict was rendered in favor of defendant. A motion for new trial was filed in each case, which was overruled, and exceptions taken, and the cases brought here for review.

The facts are that on January 13, 1908, the Traders' Compress Company was engaged in compressing cotton in El Reno, Okla., and that on that day Anderson, Clayton & Co. and H. T. Williams & Co. were the owners of 312 bales of cotton, of the value of $18,937.33, which was stored on the platform of the compress of defendant; that all of said cotton on said date was damaged by fire, and the loss paid to the owners by plaintiff; that the price charged by defendant for compressing cotton was 10 cents per hundred, and no extra charge was made for storing the cotton on the platform (that is, defendant furnished the labor to take the cotton from the cars and run it through the compress, bring it back, and place it on the platform, and afterwards reload it on the cars for 10 cents a hundred).

It is contended that the court erred in trying this case upon the theory that it was a question of fact for the jury to determine as to whether or not defendant was a bailee for hire or a gratuitous bailee, urging that this question was one of law for the court. It is unnecessary for us to decide this question, as plaintiff requested the court to instruct the jury on the subject complained of, and by so doing it cannot be heard to take advantage of such instruction, which is, in substance, the same as the one requested by it. *Brissey v. Trotter*, 34 Okla. 445, 125 Pac. 1119.

Complaint is made to the giving of the instruction wherein the jury was told that if they found from the evidence that the cotton was being stored and kept by defendant on its compress platform, and that it was charging the owners thereof any amount for such storage or received any benefit from such storage, then it became a bailee for hire; it being contended that this instruction is inconsistent with the instructions given the jury, wherein they were charged that a bailee for hire is one who stores or keeps personal property for another under an agreement whereby he would receive some profit or financial benefit, and that if they found from the evidence that

defendant unloaded cotton, brought to its plant stored, compressed, and reloaded same for 10 cents a hundred, and that it would not have stored this cotton except for the profit or benefit it received from the compression, then, in that event, it would be a bailee for hire.

It is conceded that the latter instruction correctly charged the jury as to the elements necessary to constitute a bailee for hire, but it is argued that the jury might reasonably conclude that the evidence shows that defendant was actually charging for such hire before they would be justified in finding that defendant was such a bailee. We cannot agree with this argument. These instructions must be considered as a whole and construed together, and, when so construed, they are not inconsistent, but give a fair statement of the law as to what is necessary to constitute a bailee for hire and his duties as such bailee. They advise the jury that, before they are justified in finding that defendant was a bailee for hire, it would be necessary for the evidence to show that defendant was either (1) actually charging for such storage, or (2) receiving some profit or financial benefit for the same. Viewing these instructions in this light, they are consistent and harmonious. The court might have combined these two instructions, but its failure to do so was not prejudicial to plaintiff.

Plaintiff requested the court to instruct the jury, in substance, that the burden of proof was upon plaintiff to prove the material allegations of its petition, but that if the jury found that the cotton in question was delivered to defendant in good condition, and that, when it was turned over afterwards to the representative of the insurance company, it had been burned and damaged, the presumption of law would be that defendant was responsible for such injuries until it established by a preponderance of evidence that the injury to the cotton was not the result of failure to use ordinary care and diligence. This request was refused. The court instructed the jury, in substance, that the burden of proof was upon plaintiff to establish, by a preponderance of evidence,

that defendant was guilty, by some act or omission, with reference to the protection of the cotton in question, and which act or omission must be the direct, proximate cause of the fire; and the jury were further instructed that it would not be sufficient for plaintiff to show an act or omission which constituted such negligence, unless the evidence further showed, by a preponderance thereof, that such act or omission was the cause of the fire.

It is admitted that the principal point relied upon in these instructions involves the question of burden of proof in actions between bailor and bailee, and that this relation existed between the plaintiff and defendant in this action.

The burden of establishing the entire case by a preponderance of the evidence is at all times upon the party having the affirmative and remains during the entire case where the pleadings originally placed it. Proof of the bailment and loss or injury constitutes a *prima facie* case under certain conditions, but this has no effect upon the burden of proof, as it remains unchanged. The duty of proceeding to adduce evidence after a *prima facie* case has been established shifts to the party with the negative of the issue. This, however, is not a shifting of the burden of proof, as it remains where the pleadings placed it; but, after a *prima facie* case has been established, the burden of producing the evidence necessary to overcome the *prima facie* case shifts to the defendant, and this is termed a shifting of the burden of evidence.

" ' "Burden of proof," as a phrase, means either: (1) The necessity of establishing the existence of a certain fact or set of facts by evidence which preponderates to the legally required extent; or (2) the necessity which rests on the party, at any particular time during a trial, to create a *prima facie* case in his own favor, or to overthrow one when created against him.' Ency. of Law & Practice, 16 Cyc. p. 926, quoted in *Ruth v. Krone,* 10 Cal. App. 770, 103 Pac. 960 (1909). 'The term "burden" or "burden of proof," is frequently used to signify simply the burden of meeting a *prima facie* case, rather than the burden of producing a preponderance of evidence.' *Cody v.*

*Market St. Ry. Co.,* 148 Cal. 90, 93, 82 Pac. 666, 667 (1905), quoted in *Alabama & V. Ry. Co. v. Groome* (1910) 97 Miss. 201, 52 South. 703. 'Burden of proof' and burden of evidence' are often confused. The phrase 'burden of proof' is in fact more philosophical than practical. It means generally that a plaintiff, however often the evidence shifts, must, upon the whole, persuade the jury, by legal evidence, that his contention is right. The risk of nonpersuasion is all the time upon him. If he fails to persuade, he loses his case. This risk of nonpersuasion is the burden which he must assume. *Foss v. McRae,* 105 Me. 140, 73 Atl. 827 (1909). 'Burden of proof' means the burden of establishing the case, and remains unchangeable throughout the entire case, where the pleadings originally placed it, and is on him alone who has the affirmative, though the burden of the evidence may, during the trial, be shifted. *Dorrell v. Sparks* (1910) 142 Mo. App. 460, 127 S. W. 103. 'The phrase "burden of proof" is commonly used in a dual capacity. In its first and proper sense it signifies the duty of establishing the entire case by a preponderance of evidence; and, as such, the burden is never shifted, but rests at all times upon the plaintiff. The same phrase is used, however, to indicate the duty of proceeding to adduce the evidence; and that burden does shift to the opposing party each time a *prima facie* case is made by the other. The fact that the same words are used to express two entirely distinct ideas often leads to much confusion of thought, as in the case at bar.' *Toube v. Rubin-Blankfort Co.,* 63 Misc. Rep. 298, 116 N. Y. Supp. 673, 674 (1909)." Note to section 936, 2 Chamberlayne on Evidence, p. 1097.

"So far as the party having the burden of proof is concerned, two results obviously follow from the rule: (1) The two burdens are upon the same person at the beginning of the trial. Until the party having the burden of proof establishes a *prima facie* case in his own favor, his adversary need do nothing. The actor has failed. A motion to direct a verdict is in order. The inertia of the court is not yet overcome, and that is victory for the *reus*. Upon the establishment of the actor's *prima facie* case, the burden of evidence 'shifts' to the *reus,* the party on the defensive, with the negative of the issue. It is now incumbent upon the nonactor to deprive his adversary's case of its *prima facie* quality. Preponderance in his own favor would be of advantage because just so much harder for the actor to overcome; but

equilibrium suffices for the nonactor's purpose. Should the non-actor succeed in either effort, the burden of evidence returns to the actor, the party having the burden of proof, and may continue so to alternate between the parties until all probative or constituent facts are before the court. (2) It also follows that the two burdens are not only together at the beginning of the case; they are also united at the end of it, should the actor fail to maintain his case. If he win, the burden of evidence is resting on his opponent. It is necessary to the success of the actor, the party having the burden of proof, that he should emerge from the vicissitudes of the trial, including the changes in the position of the burden of evidence, with an ultimate *prima facie* case still persisting in his own favor." Id. sec. 940.

"The burden of evidence presents radical differences both in quality and position from the burden of proof. In position, the burden of proof is unchanging; once imposed, it remains. The burden of evidence may 'shift' to any extent, alternating between the parties according to the exigencies of the trial. The position of the burden of proof is determined by the pleadings. That of the burden of evidence has no necessary or invariable connection with them." *Id.* sec. 967.

" 'It is very common to say in such cases that the burden is upon the defendant to establish the fact relied upon. All that this can properly mean is that, when the plaintiff has established a *prima facie* case, the defendant is bound to controvert it by evidence, otherwise he will be cast in judgment. When such evidence is given, and the case upon the whole evidence, that for and that against the fact asserted by the plaintiff, is submitted to court or jury, then the question of the burden of proof as to any fact, in its proper sense, arises and rests upon the party upon whom it was at the outset, and is not shifted by the course of the trial.' *Farmers' L. & T. Co. v. Siefke,* 144 N. Y. 354, 359, 39 N. E. 358 (1895)." Note to above section 967.

Under this theory the court properly placed the burden of proof upon plaintiff, who had the affirmative, but, independent of the distinction we make between "burden of proof" and "burden of evidence," the theory advanced in *Stone v. Case,* 34 Okla. 5, 124 Pac. 960, 43 L. R. A. (N. S.) 1168, is decisive of the questions here involved.

364        SUPREME COURT OF OKLAHOMA.

Standard Marine Ins. Co., Ltd., of Liverpool v. Traders Compress Co.

It is alleged in the petition that the Traders' Compress Company owned and operated a certain compress situated in the city of El Reno, and entirely surrounding the compress was situated a large platform, upon which platform was collected and stored various bales of cotton, which were shipped to defendant to be compressed; that on the 13th day of January, 1908, there were stored on said platform about 312 bales of cotton, which were insured by plaintiff; on that date said cotton was damaged by fire, without the fault of plaintiff, but through the negligence, wantonness, and carelessness of defendant, its servants and employees; and that plaintiff paid to the owners of said cotton the sum of $8,199.40, which is alleged to be the damage sustained to said cotton, and asked that plaintiff be subrogated to the rights of the owners thereof, under the terms of said policy.

Under the allegations and proof in this case, the court properly instructed the jury that the burden of proof was upon plaintiff It is true that ordinarily, where the relation of bailor and bailee exists, the proof of loss or injury establishes a *prima facie* case against the bailee sufficient to put him upon his defense, and in such case the burden of evidence shifts to the bailee. This rule, however, does not apply in the instant case, as plaintiff alleged that the damage was occasioned by fire, and that the fire was caused by defendant's negligence. When plaintiff alleges a loss by fire, defendant is relieved of the presumption of negligence, and plaintiff thereby assumes the burden of proving such negligence. It is said in *Stone v. Case, supra*:

"If a cause of action is stated at all, the plaintiff's right of recovery is predicated solely upon defendant's negligence. It states a condition of facts upon which relieves defendant of the presumption of negligence ordinarily arising from a *prima facie* case of failure to return the property. It alleges that the loss was caused by fire, and that the first was caused by defendant's negligence. In alleging a loss by fire, the defendant was relieved of the presumption of negligence, and, in alleging that the fire was caused by negligence, plaintiff assumed the burden of proving

such negligence. Her right to recovery is based upon defendant's negligence. She must prove this negligence in order to fix a liability on him. For under the great weight of authority, and under the light of reason, where the loss of bailor's property is occasioned by fire, robbery, burglary or theft, or by any means which would ordinarily and reasonably seem to be unavoidable, the bailee is relieved of the presumption of negligence in the loss, and of the consequent burden of interposing an affirmative defense.".

The court in that case cites with approval *Wilson v. Southern Pac. R. Co.,* 62 Cal. 164; *James v. Orrell,* 68 Ark. 284, 57 S. W. 931, 82 Am. St. Rep. 293; *Claflin v. Meyer,* 75 N. Y. 260, 31 Am. Rep. 467; *Higman v. Camody,* 112 Ala. 267, 20 South. 480, 57 Am. St. Rep. 33.

In the case of *Wilson v. Southern Pac. R. Co.,* the court said:

"A *prima facie* case of negligence is made out against a warehouseman, who refuses to deliver property stored with him, upon proof of demand and refusal. Upon such proof alone the burden is on him to account for the property; otherwise he shall be deemed to have converted it to his own use. But if it appears that the property, when demanded, was consumed by fire, the burden of proof is then on the bailor to show that the fire was the result of the negligence of the warehouseman. *Harris v. Packwood,* 3 Taunt. 264; *Beardslee v. Richardson,* 11 Wend. (N. Y.) 26, 25 Am. Dec. 596; *Browne v. Johnson,* 29 Tex. 43; *Lamb v. Camden & Amboy R. Co.,* 46 N. Y. 271, 7 Am. Rep. 327; *Jackson v. Sac. Val. R. Co.,* 23 Cal. 269. The negligence of the appellant, as the proximate cause of the loss of the property by fire, thus became the essential fact to recovery; and the burden of proof was upon the plaintiff in the action. It was incumbent on him to prove that the defendant had, by some act or omission, violated some duty, by reason of which the fire originated, or that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted, or contributed to cause or permit the fire by which the property was destroyed."

We are inclined to follow the rule advanced in *Stone v. Case.*

*supra,* and, as this petition alleges a reasonable excuse for the failure to deliver the property in good condition, the bailee is relieved of the presumption of negligence.

We therefore conclude that the burden of establishing negligence was properly presented to the jury, and the cause should therefore be affirmed.

By the Court: It is so ordered.